UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Michael Mark Mulholland and
Patricia Mary Mulholland,
       Debtors.

No. 7-10-14587 JR

The Estate of Ray Bishop and
Patricia Bishop,

       Plaintiffs,
v.
Michael Mark Mulholland and
Patricia Mary Mulholland,

       Defendants.

Adv. No. 10-1154 J

## MEMORANDUM OPINION

This matter is before the Court on a complaint objecting to discharge under 11 U.S.C. §727(a)(4)(A). A trial on the merits was held on June 2, 2011. Plaintiffs assert that Defendants knowingly and fraudulently made a false oath or account by failing to accurately disclose assets, income, and pre-petition transfers in their Statement of Financial Affairs and Schedules. Defendants acknowledge that their Statement of Financial Affairs and Schedules contain errors, but assert that the errors resulted from honest mistakes and misunderstanding as to the information they were required to disclose, and that they did not act with fraudulent intent.

The Court, having considered the evidence presented at trial, the arguments of counsel, and the relevant case law, and being otherwise sufficiently informed, has determined the Defendants' discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

## FACTS

Debtors, Michael Mark Mulholland and Patricia Mary Mulholland, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 8, 2010 (the "Petition Date"). They are represented by counsel in their chapter 7 case. For his principal occupation, Mark

Mulholland operates a vending machine business known as Ruidoso Vending. The Debtors own the business as a sole proprietorship. The Debtors also operate a sole proprietorship business known as Alpha Storage. Through Alpha Storage, the Debtors rent two storage units on a month-to-month basis under oral agreements. They use a portion of the Alpha Storage units to store inventory and equipment for Ruidoso Vending.

On the Petition Date, the Debtors filed their Statement of Financial Affairs and Schedule of Assets and Liabilities, which they signed under penalty of perjury. The Statement of Financial Affairs and Schedules contain various misstatements and omissions.

Schedule B at line 2 lists "Joint checking account, First National Bank, Ruidoso, NM 88345" having a current value of $500.00, and no other accounts. On the Petition Date, the Debtors had the following bank accounts:

| Bank | Account number (last 4 digits) | Name(s) on the Account | Account balance on the Petition Date | Total Deposits and Withdrawal on the Bank Statement that Includes the Petition Date |
|---|---|---|---|---|
| 1st National Bank in Ruidoso | 5101 | M. Mark Mulholland dba Ruidoso Vending Commission Account | $ 42.18 | Deposits $ 669.77 Withdrawals $ 566.40 |
| 1st National Bank in Ruidoso | 8111 | Patricia Mulholland or M Mark Mulholland | $ 1,952.16 | Deposits $ 3,074.54 Withdrawals $ 3,216.12 |
| 1st National Bank in Ruidoso | 9811 | Mr. or Mrs. M. Mark Mulholland | $ 458.93 | Deposits $ 7,768.81 Withdrawals $ 7,930.74 |

On Schedule B at line 9, which requires disclosure of interests in insurance policies, the Debtors checked "None." On the Petition Date, the Debtors owned two life insurance policies having no cash value.

On Schedule B at line 29, which requires disclosure of machinery, fixtures, equipment and supplies used in business, the Debtors listed "Snack Machines, 3 Polyvend, 6 federal, 4 Rowe Automatic" and scheduled a value of $4,000 for the equipment. Those scheduled items are candy vending machines used in the Ruidoso Vending business. On the Petition Date, the Debtors owned and operated, as part of the Ruidoso Vending business, five additional candy vending machines, six cigarette vending machines, and twenty one gumball vending machines. In addition, on the Petition Date, the Debtors operated as part of the Ruidoso Vending business at least fifty Coca-Cola vending machines that they rent as lessees on a month-to-month basis.

On Schedule B at line 30, which requires disclosure of Inventory, the Debtors checked "None" on their schedules filed on the Petition Date. After the meeting of creditors held pursuant to 11 U.S.C. § 341(a), the Debtors amended line 30 of Schedule B to list "13 machines at a value of $60.00 each, Storage bin with $500.00 worth of inventory" and scheduled an inventory value of $1,280. The reference to 13 machines was a reference to the 13 candy vending machines listed on line 29 of Schedule B.

On Schedule G, which requires disclosure of executory contracts of any nature and all unexpired leases of real or personal property, the Debtors checked "None." In the Alpha Storage business, the Debtors rented two storage units to third parties under oral month-to-month leases. In the Ruidoso Vending business, the Debtors were lessees for at least fifty drink machines rented on a month-to-month basis.

Schedules I and J require debtors to list their occupation, current income, and current expenses. The Debtors' Schedule I states that Michael Mark Mulholland's occupation is "Self Storage Operator," and Patricia Mary Mulholland's occupation is "Retired." Schedule I lists the following income: 1) for Michael Mulholland, $1,797.00 per month income from the self

storage business, $253 per month from an IRA, and $153.00 per month of pension or retirement income; and 2) for Patricia Mulholland, $2,050 per month pension or retirement income. The Debtors' combined monthly income reported on Schedule I is $3,633.00. Schedule J reports total monthly expenses of $7,927.00, including a $1,712.00 monthly payment on the storage units for the Alpha Storage business. Schedules I and J do not disclose any of the Debtors' income or expenses from the operation of the Ruidoso Vending business.

Question 1 of the Statement of Financial of Affairs requires debtors to state the "gross amount of income" the debtors have received from operation of their business from the beginning of the current calendar year to the date the bankruptcy case was commenced and for the two years immediately preceding calendar years. In response to Question 1 the Debtors state:

| | | |
|---|---|---|
| 2008 | $ 26,924.00: | Husband Self Storage Operator |
| 2009 | $ 20,858.00: | Husband Self Storage Operator |
| 2010 YTD | $ 11,722.00: | Husband Self Storage Operator |

Question 2 of the Statement of Financial of Affairs requires debtors to state the amount of income they received other than from employment, trade, profession, or operation of the debtors' business during the two years immediately preceding calendar years**.** In response to Question 2 the Debtors state:

| | | |
|---|---|---|
| 2008 | $ 24,620.00: | Wife Retirement Income |
| 2009 | $ 24,620.00: | Wife Retirement Income |
| 2010 YTD | $ 14,748.00: | Wife Retirement Income |

The Debtors three bank accounts reflect total deposits, as follows:

| Bank | Account number (last 4 digits) | Year | Total deposits |
|---|---|---|---|
| 1st National Bank in Ruidoso | 5101 | 2009 | $ 5, 873.36 |
| | | Jan to Sept 2010 | $ 2,743.33[1] |
| 1st National Bank in Ruidoso | 8111 | 2009 | $ 32,606.73[2] |
| | | Jan to Sept 2010 | $ 23,181.85[3] |

---

[1] Excludes deposits made in the months of January, February and March 2010 because the bank statement for those months were not available.
[2] Includes $9,355.05 deposited in 2009 from sources other than Patricia Mulholland's retirement income.

-4-

| 1st National Bank in Ruidoso | 9811 | 2009<br>Jan to Sept 2010 | $ 94,986.54[4]<br>$ 46,855.97[5] |

The Debtors 2009 personal federal income tax return reflects that the Debtors received $66,426 in calendar year 2009 from the Ruidoso Vending business. Of the deposits made in the Debtors' bank accounts in the months of January 2010 through September 2010, more than $40,000 was received from operation of the Ruidoso Vending business.

In response to Question 3a on their Statement of Financial of Affairs, the Debtors failed to disclose monthly payments in the amount of $750.00 during the 90-day period preceding commencement of their bankruptcy case to a lender holding a lien on the Debtors' Ford 350 truck used in the Ruidoso Vending business. The Debtors made those payments by depositing cash in a bank account in their daughter's name and having their daughter then disburse funds from the account to the lender. The Debtors set up that arrangement when their bank accounts were being garnished.

Question 18 of the Statement of Financial of Affairs requires debtors to identify certain information regarding all businesses in which a debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or self-employed professional within the six years preceding the commencement of the bankruptcy case. The Debtors stated in response to Question 18:

> Ruidoso Vending, Taxpayer I.D. No. 85-0218320, P.O. Box 500, Alto, NM 88345, vending machine business, 1987-January 4, 2008
>
> Alpha Storage, last four digits of social security number 8990, 113 Upper Terrace Rd., Ruidoso, NM 88345, storage unit business, 2003-present.

---

[3] Excludes deposits made in the month of January 2010 because the bank statement for that months was not available. Includes $11,844.60 deposited from January through September 2010 from sources other than Patricia Mulholland's retirement income.
[4] Includes $74,945.01 from sources other than retirement income.
[5] Includes $36,504.83 from sources other than retirement income.

-5-

The corporation that operated the Ruidoso Vending business ceased operations in January 2008. Since that time, Mark Mulholland has been operating the Ruidoso Vending business as a sole proprietorship.

Plaintiffs commenced this adversary proceeding on September 23, 2010. The meeting of creditors held pursuant to 11 U.S.C. § 341(a) was held and concluded on October 19, 2010. Except for an amendment to Schedule B at line 30 filed November 9, 2010 relating to inventory, the Debtors did not prior to the trial on the merits held June 2, 2011 amend the Statement of Financial Affairs or Schedules of Assets and Liabilities filed on the Petition Date.[6]

## DISCUSSION

The Plaintiffs, The Estate of Ray Bishop and Patricia Bishop, assert that the Debtors knowingly and fraudulently presented material false information and omitted material information about their assets, income and occupation in their Statement of Financial Affairs and Schedules, which constitutes a false oath for which their discharge should be denied under 11 U.S.C. § 727(a)(4). The Debtors counter that the omissions in their Statement of Financial Affairs and Schedules were not done knowingly and fraudulently but were honest mistakes based on the Debtors' good faith misunderstanding what they were required to disclose.

Granting a discharge to the honest but unfortunate debtor is a fundamental policy of bankruptcy.[7] Given the harshness of the penalty of denial of discharge, Courts construe

---

[6] On June 7 and 8, 2011, after the trial on the merits, the Debtors amended their Statement of Financial Affairs and Schedules.

[7] *See Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)(noting that a fundamental purpose driving the bankruptcy system is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.")(citations omitted); *Standiferd v. United States Trustee*, 641 F.3d 1209, 1212 (10th Cir. 2011)(giving the debtors a fresh start by discharging debts is reserved for "'the honest but unfortunate debtor'")(quoting *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(quotations omitted))(remaining citation omitted)).

exceptions to discharge liberally in favor of the debtor and strictly against creditors.[8] Nevertheless, debtors who seek the protections afforded under the Bankruptcy Code have a duty to fully disclose the nature of their assets and financial affairs when preparing their statements and schedules.[9] The denial of discharge serves to ensure that "'those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.'"[10]

"Section 727(a)(4)(A) is designed to ensure that the debtor provides honest and reliable information to the trustee and others interested in the administration of the bankruptcy estate without their having to conduct costly investigations to discover the debtor's true financial condition."[11] Bankruptcy trustees typically lack the time and resources to conduct such investigations.[12] "In order to deny a debtor's discharge pursuant to [Section 727(a)(4)(A)], a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[13]

---

[8] *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 914-915 (Bankr.D.Utah 2006)(citing *In re Kontrick,* 295 F.3d 724, 736 (7th Cir. 2002) and *Rosen v. Bezner,* 996 F.2d 1527, 1534 (3rd Cir. 1993)(remaining citations omitted)).

[9] *Butler*, 377 B.R. at 914-15("In exchange for that 'fresh start,' the Code requires debtors to accurately and truthfully present themselves before the court.")(citing *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994)). *See also*, *The Cadle Co. v. King (In re King)*, 272 B.R. 281, 300 (Bankr.N.D.Okla. 2002)("'The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what *he* thinks are important assets or debts. Debtor[s] must, under oath, list *all* creditors and assets, as well as all transfers of property within the prior year.'")(quoting *Superior Nat'l Bank v. Schroff (In re Schroff)*, 156 B.R. 250, 256 (Bankr.W.D.Mo. 1993)(emphasis added by *King*)).

[10] *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)(quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)).

[11] *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 154 (Bankr.E.D.Pa.2010)(citing *In re Retz,* 606 F.3d 1189, 1196-97 (9th Cir. 2010)(remaining citation omitted)). *See also In re Guadarrama*, 284 B.R. 463, 474 (C.D.Cal. 2002)(full and truthful answers in the statement of financial affairs are required to give the trustee and creditors the ability to discover assets and fully investigate the debtor's pre-bankruptcy financial affairs).

[12] *See Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 997 (Bankr.N.D.Ill. 1992)(stating that "Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors.")(citations omitted).

[13] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997)(citation omitted).

Case 10-01154-j    Doc 24    Filed 09/16/11    Entered 09/16/11 11:28:47 Page 7 of 14

*False Oath*

A debtor's statement of financial affairs and schedules are made under oath.[14] Omissions as well as affirmative statements made in a debtor's Statement of Financial Affairs and Schedules constitute statements under oath and can constitute a false oath for purposes of Section 727(a)(4)(A).[15]

*Materiality*

Materiality is broadly defined for purposes of Section 727(a)(4)(A). "A false statement or omission may be material even in the absence of direct financial prejudice to creditors."[16] Debtors have an absolute duty to report whatever interest they hold in property, even if they believe their assets are unavailable to the bankruptcy estate.[17] Debtors may not decide for themselves the nature of their property interest or that a property interest need not be disclosed.[18] "'The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Garland*, 417 B.R. 805, 814 (10th Cir.BAP 2009)(*quoting Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618

---

[14] Rule 1008, Fed.R.Bankr.P. and 28 U.S.C. § 1746.
[15] *In re Phillips*, 2010 WL 6259975, *6 (9th Cir. BAP 2010)("A false statement or omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath.")(citing *In re Roberts*, 331 B.R. 876, 882 (9th Cir.BAP2005)); *Melarango v. Ciotti (In re Ciotti),* 448 B.R. 694, 703-04 (Bankr.W.D.Pa. 2011)("a debtor's failure to list in the bankruptcy schedules and statement of financial affairs all assets owned can constitute a false oath or account since these statements are made under oath.")(citation omitted); *Netherton v. Baker (In re Baker)*, 205 B.R. 125, 131 (Bankr.N.D.Ill.1997)("A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4).")(citations omitted); *Lanker v. Wheeler (In re Wheeler)*, 101 B.R. 39, 49 (Bankr.N.D.Ind.1989)("A false oath may be made by the debtor by signing sworn documents that bear false information . . .")(citation omitted).
[16] *Roberts*, 331 B.R. at 883 (citations omitted).
[17] *See Palmer v. Downey (In re Downey)*, 242 B.R. 5, 13-14 (Bankr.D. Idaho 1999)(stating that "[i]t is not for the debtors to elect what to disclose; all property and interests in property must be disclosed.")(c*iting In re Tripp*, 224 B.R. 95, 98 (Bankr.N.D.Iowa 1998), *In re Guajardo*, 215 B.R. 739, 742 (Bankr.W.D.Ark.1997) and *In re Craig*, 195 B.R. 443 (Bankr.D.N.D.1996)).
[18] *Id*.

-8-

(11th Cir.1984)). A debtor has a duty to disclose assets that are worthless, and a failure to do so can support denial of discharge under Section 727(a)(4).[19]

*Knowingly and Fraudulently*

A debtor acts knowingly and fraudulently for purposes of 11 U.S.C. §727(a)(4) if he or she acts deliberately and consciously with an intent to defraud.[20] Because debtors rarely admit to fraudulent intent, the requisite intent necessary for denial of discharge under § 727(a)(4)(A) may be inferred from circumstantial evidence, including the debtor's course of conduct, a pattern of concealment and other surrounding circumstances.[21] "[W]hile evidence of recklessness alone will not satisfy the intent requirement of § 727(a)(4), evidence of recklessness may be combined with other circumstantial evidence to prove fraudulent intent."[22] The cumulative effect of the debtor's false statements and a failure to correct misstatements and omissions promptly can evidence a pattern of reckless and cavalier disregard for the truth that is sufficient to prove fraudulent intent under § 727(a)(4)(A).[23] However, a debtor's discharge will not be denied

---

[19] *See In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990)("a 'recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted ... information concerned a worthless business relationship or holding; such a defense is specious'")(quoting *Chalik*, 748 F.2d at 618).

[20] *See United States Trustee v. Warr (In re Warr),* 410 B.R. 891, 897 (Bankr.D.Idaho 2009)(both knowledge by an action taken deliberately and consciously and an intent to defraud are required to deny a discharge under 11 U.S.C. § 727(a)(4)).

[21] *See, e.g., Lincoln Sav. Bank v. Freese (In re Freese)*, 2011 WL 2604750, *4 (Bankr. N.D. Iowa 2011)(fraudulent intent may be established by circumstantial evidence)(quoting *In re Bauder,* 333 B.R. 828, 830 (8th Cir. BAP 2005); *Singh*, 433 B.R. at 150 (same).

[22] *In re Khalil,* 578 F.3d 1167, 1168 (9th Cir. 2009). *See also, Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011)("a showing of reckless disregard for the truth is sufficient to prove fraudulent intent.")(citations omitted); *In re Keeney*, 227 F.3d 679, 686 (6th Cir. 2000)("A reckless disregard as to whether a representation is true will also satisfy the intent requirement."); *Garland*, 417 B.R. at 815 ("While 'mere mistake or inadvertence is not sufficient to bar a debtor's discharge' under § 727, 'reckless indifference to the truth has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)'")(quoting *King,* 272 B.R. at 302)(internal quotation marks omitted)).

[23] *See In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009)("the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent."). *See also, McCarthey Investments LLC v. Shah (In re Shah)*, 2010 WL 2010824, *6 (Bankr. S.D.N.Y. 2010)(fraudulent intent inferred from the Debtor's level of sophistication and a pattern of numerous misstatements); *In re Wills*, 243 B.R. 58, 64 (9th Cir.BAP 1999)("A court may find the requisite intent where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth.)(citing *In re Coombs,* 193 B.R. 557, 564 (Bankr.S.D.Cal. 1996)).

Case 10-01154-j    Doc 24    Filed 09/16/11    Entered 09/16/11 11:28:47 Page 9 of 14

under 11 U.S.C. §727(a)(4) when false statements or omissions are due to mere mistake or inadvertence[24] or even made from ignorance or carelessness.[25]

While the creditor bears the ultimate burden of proof under 11 U.S.C. §727(a)(4), once the creditor has demonstrated an omission or false statement, the burden of going forward shifts to the debtor to show that the omission was the result of an honest mistake or to otherwise provide a credible explanation for the false statement.[26] Ultimately, the determination of whether a debtor's discharge should be denied under U.S.C. §727(a)(4) often depends upon the demeanor and credibility of the debtor in explaining the reasons for failing to make full and complete disclosures.[27]

*Application of the law to this case*

The Debtors' Schedules and Statement of Financial Affairs contain several affirmative misstatements and omissions. The Debtors disclosed only one of three bank accounts with balances on the Petition Date, even though the Debtors were actively using all three accounts. They also failed to schedule oral month-to-month rental agreements of storage units and drink machines. The Debtors failed to schedule two life insurance policies. The Debtors also failed to disclose on their Statement of Financial Affairs pre-petition payments on a vehicle made within 90 days prior to commencement of the bankruptcy case.

---

[24]*See Brown,* 108 F.3d at 1294 (recognizing that "we must not penalize the debtor for an inadvertent mistake.").
[25]*Roberts,* 331 B.R. at 884; *Ciotti*, 448 B.R. at 704 (observing that "[e]ven a false statement resulting from ignorance or carelessness does not rise to the level of "knowing and fraudulent" sufficient to deny a discharge.")(citing *In re Oliver*, 414 B.R. 361, 374 (Bankr.E.D.Tenn. 2009)).
[26]*See Chase v. Harris (In re Harris)*, 385 B.R. 802, 804-05 (1st Cir.BAP 2008)("Once it reasonably appears that the debtor made a false oath, the burden shifts to the debtor to come forward with evidence that she has not committed the offense charged.")(citations omitted); *In re Moreo*, 437 B.R. 40, 59 (E.D.N.Y. 2010)("Once the moving party meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a 'credible explanation.'")(citation omitted).
[27]*See Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d at 354-55 (4th Cir. 2007)("in evaluating a §727(a)(4)(A) claim, 'a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'")(quoting *Williamson v. Fireman's Fund Ins. Co.,* 252 F.2d 249, 252 (4th Cir. 1987)); *In re Burgess*, 955 F.2d 134, 137 (1st Cir. 1992)(same).

-10-

In addition, required disclosure is lacking regarding the Debtors sole proprietorship known as Ruidoso Vending. The Debtors failed to schedule all of the assets of that business. They did not disclose on Schedule I Mark Mulholland's occupation as an operator of that business, or include in Schedules I or J any of the income or expense of the business. The Debtors did not include any of the revenues of Ruidoso Vending when listing their pre-petition income in response to Statement of Financial Affairs, Questions 1 and 2, and did not disclose Ruidoso Vending, the sole proprietorship, in response to Question 18.

Patricia Mulholland did not testify. Mr. Mulholland testified that he did not list six cigarette machines and twenty gumball machines he operates in his Ruidoso Vending business because the machines are basically worthless due to there being no market for the types of machines he owns. He testified that he disclosed his self storage unit business instead of his Ruidoso Vending business as his occupation in Schedule I because he believed he had to choose one occupation to list and he chose the self storage business as his occupation. He testified further that he did not list the bank account ending in 5101 because it is a business bank account used by Ruidoso Vending to pay commissions, and that the funds in the account are deposited and disbursed within days. Mr. Mulholland testified that he believed he did not need to include any of the income or expenses of Ruidoso Vending in Schedules I or J, or in response to Statement of Financial Affairs Questions 1, because it was business income and expenses, and, in any event, Ruidoso Vending did make a profit. Likewise, he testified that he did not disclose prepetition vehicle payments made within the 90-day period prior to the commencement of his bankruptcy case because he viewed those payments as business expenses, and he believed that disclosure of business expenses was not required. Mr. Mulholland testified that he did not list six cigarette machines and twenty gumball machines he operates in his Ruidoso Vending

business because the machines are basically worthless.  He explained further that he believes there is no market for those types of machines.  Mr. Mulholland testified that he did not include on Schedule H his two storage unit rentals to third parties because they were oral month-to-month rentals, and he thought only written leases for a longer term needed to be disclosed.  Finally, Mr. Mulholland testified that he did not schedule his two life insurance policies because they have no cash value.

The Court does not find Mr. Mulholland's explanation of why he omitted information concerning Ruidoso Vending from the Statement of Financial Affairs and Schedules to be credible.  Mr. Mulholland testified that he believed such information was not required because Ruidoso Vending is a business.  The Debtors' own Statement of Financial Affairs and Schedules belie this position.   The Debtors owned and operated two sole proprietorship businesses on the Petition Date:  Ruidoso Vending and Alpha Storage.  The Debtors included on Schedules I and J the income and expenses of Alpha Storage and disclosed in response to Statement of Financial Affairs Question 1 the income of Alpha Storage, even though it is also a business.  In response to Statement of Financial Affairs Question 18, which requires disclosure of corporations and sole proprietorships, the Debtors disclosed their Alpha Storage sole proprietorship and Ruidoso Vending for the period it operated as a corporation from 1987 to January 4, 2008, but failed to disclose the Ruidoso Vending sole proprietorship they have operated since January 4, 2008.  The Debtors listed Mr. Mulholland's occupation as a self storage operator, even though his principal occupation was operating Ruidoso Vending.   No credible explanation was given by the Debtors for their failure to disclose the Ruidoso Vending sole proprietorship in their Schedules and Statement of Financial Affairs.    If Mr. Mulholland believed information regarding Ruidoso Vending did not need to be disclosed because it is a business, that does not explain why he

scheduled some of the equipment and inventory of Ruidoso Vending in Schedule B nor why he included information on his Statement of Financial Affairs regarding his other business, Alpha Storage.

The Court also does not find credible Mr. Mulholland's testimony that he believed he did not need to disclose business income in Schedule I or in response to Statement of Financial Affairs Question 1 if the business did not make a profit. Statement of Financial Affairs Question 1 expressly states that all "gross income" is to be disclosed; it does not request disclosure of "net income" after deduction of expenses. Further, Schedules I and J require debtors to lists all income and expenses.

The Court finds that the Debtors made false statements under oath in their Statements of Financial Affairs and Statements, and that the statements were material. Further, having considered the nature of the nature of the misstatements and omissions in the Debtors' Statement of Financial Affairs and Schedules, Mark Mulholland's explanation regarding the misstatements and omissions, surrounding circumstances, and the cumulative effect of the misstatements and omissions, the Court finds the misstatements and omissions by Mark Mulholland were made with the requisite knowledge and fraudulent intent required for denial of discharge under 11 U.S.C. § 727(a)(4)(A). Although the Debtors did amend their Statement of Financial Affairs and Schedules of Assets and Liabilities following the trial on the merits in this adversary proceeding, the Court finds that such amendments do not negate the finding of fraudulent.[28]

The Plaintiffs demonstrated that the Statement of Financial Affairs and Schedules contained false statements and omissions. The Statement of Financial Affairs and Schedules

---

[28]*Cf. In re Beauchamp*, 236 B.R. 727, 734 (9th Cir. BAP 1999), *aff'd,* 5 Fed.Appx. 743 (9th Cir. 2001)(affirming a denial of discharge even though the debtor ultimately amended his schedules because the "trial court took testimony, gauged the demeanor of the witnesses, and found that, but for the scheduled Rule 2004 examination, [the Debtor] would not have disclosed the account."); *In re Gartner,* 326 B.R. 357, 373 (Bankr.S.D.Tex. 2005)(finding that filing amended Schedules and an Amended Statement of Financial Affairs did not excuse the debtor's false oaths).

were signed not only by Mark Mulholland but also by Patricia Mulholland. Consequently, the burden shifted not only to Mark Mulholland but also to Patricia Mulholland to show that the false statements and omissions were the result of an honest mistake on her part or to otherwise provide a credible explanation for the false statements and omissions. Because Patricia Mulholland did not testify, and the Court has found that the explanations given by Mark Mulholland do not negate a finding knowledge and fraudulent intent, the Court finds that the Plaintiffs have also sufficiently established that the discharge should be denied under Section 727(a)(4)(A) as to Patricia Mulholland.

## CONCLUSION

For the foregoing reasons, the Court will deny the discharge as to both Mark Mulholland and Patricia Mulholland under 11 USC §727(a)(4)(A). A judgment consistent with these findings of fact and conclusions of law will be entered.

_____
ROBERT H. JACOBVITZ
UNITED STATES BANRUPTCY JUDGE

Entered on Docket Date: September 16, 2011

Copies to:

**Richard A Hawthorne**
Attorney for Plaintiff
1221 Mechem Dr Ste 2
Ruidoso, NM 88345-7224

**Charles E Hawthorne**
Attorney for Defendants
900 Sudderth Dr
Ruidoso, NM 88345-7224